**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| VICTOR CHARLES FOURSTAR, JR., <br><br> Petitioner, <br><br> v. <br><br> PAUL COPENHAVER, Warden, <br><br> Respondent. | No.  1:14-cv-01456-SKO   HC <br><br> **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Victor Charles Fourstar, Jr., is a federal prisoner proceeding with a petition for habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner raises multiple claims arising from disciplinary proceedings, some of which resulted in Petitioner's loss of good conduct time.

**I.      Procedural and Factual Background**

Petitioner is serving a 188-month term of imprisonment for a 2002 conviction for aggravated sexual assault in violation of 18 U.S.C. §§ 1153 and 2241(a).  At the time of briefing, his projected release date, via good conduct time, was November 17, 2016.

When Petitioner filed the instant petition on September 18, 2014, he was incarcerated at the U.S. Penitentiary, Atwater, California.  The petition includes claims arising from his tenure at the U.S. Penitentiary, Marion, Illinois, where he was incarcerated from November 6, 2013, to February 11, 2014, and the U.S. Penitentiary, Canaan, Pennsylvania, where he was incarcerated

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented, in writing, to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.

1

from July 27, 2009, to May 29, 2012. Petitioner is presently incarcerated at the Marianna Federal Correctional Institution, Marianna, Florida.

## II. Discipline of Federal Inmates, in General

The federal Bureau of Prisons ("BOP" or "Bureau") has the duty to "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(3). The inmate disciplinary program is intended to "ensure the safety, security, and orderly operation of correctional facilities, and the protection of the public, by allowing BOP staff to impose sanctions on inmates who commit prohibited acts." 28 C.F.R. § 541.1.

### A. Prohibited Acts and Sanctions

The regulations set forth acts prohibited in "any prison, institution, or facility in which persons are held in custody by direction of, or under an agreement with, the Bureau of Prisons." *See* 28 C.F.R. § 541.2. The prohibited acts are divided into four categories based on severity: greatest, high, moderate, and low. 28 C.F.R. § 541.3(a). Section 541.3 includes tables identifying the prohibited acts assigned to each category and the available sanctions. "Aiding, attempting, abetting, or making plans to commit any of the prohibited acts is treated the same as committing the act itself." 28 C.F.R. § 541.3(a).

Inmates whose U.S. Code offense occurred on or after April 26, 1996 ("PLRA inmates") may lose good conduct credit as a mandatory sanction. 28 C.F.R. § 541.4(a)(2). The amount of good conduct time lost varies according to the severity of the prohibited act. 28 C.F.R. § 541.4(b).

///

///

///

### B. The Disciplinary Process

#### 1. Incident Report

The disciplinary process begins with the issuance of an incident report to an inmate whom a BOP staff witness observes or reasonably believes has committed a prohibited act. 28 C.F.R. § 541.5(a). A BOP staff member will then investigate the charges. 28 C.F.R. § 541.5(b). The investigator must specifically inform the inmate of the charges against him, his right to remain silent, that his silence may be used to draw an adverse inference against him and that silence alone may not be used to prove guilt. 28 C.F.R. § 541.5(b)(1). When the investigator asks the inmate for a statement, the inmate may give an explanation, request interviews of witnesses, and request the securing and review of other evidence. 28 C.F.R. § 541.5(b)(2).

#### 2. Unit Discipline Committee Review

When the staff investigation is complete, it is reviewed by the Unit Discipline Committee ("UDC") within five working days of the issuance of the incident report unless the charged offense is categorized as greatest or high severity. 28 C.F.R. § 541.7. The UDC automatically refers greatest and high severity prohibited acts to the Discipline Hearing Officer ("DHO"). 28 C.F.R. § 541.7(a)(4).

The inmate may appear before the UDC except during its deliberations or when appearance would jeopardize institutional security. 28 C.F.R. § 541.7(d). The inmate may make a statement and present documentary evidence on his own behalf. 28 C.F.R. § 541.7(e). The UDC must consider and weigh all evidence. *Id.*

After the UDC has reviewed moderate or low severity prohibited acts, it may determine that (1) the inmate committed the charged prohibited act; (2) the inmate did not commit the charged prohibited act; or (3) the incident report must be referred to the DHO because of its severity. 28 C.F.R. § 541.7(a). If the committee concludes that the inmate committed the

charged prohibited act, the UDC may impose any sanction set forth in the § 541.3 tables except for loss of good conduct credit, disciplinary sanctions, or monetary fines. 28 C.F.R. § 541.7(f). The UDC must provide the inmate with a copy of its written incident report. 28 C.F.R. § 541.7(h).

### 3. DHO Hearing

The DHO is an impartial decision maker who was not a victim, witness, investigator, or otherwise involved in the incident. 28 C.F.R. § 541.8(b). A DHO will only conduct a hearing on an incident report referred by the UDC. 28 C.F.R. § 541.8.

The inmate may appear at the DHO hearing, except during deliberations or when his appearance would endanger institutional security. 28 C.F.R. § 541.8.(e). The inmate will be notified at least 24 hours before the DHO hearing. 28 C.F.R. § 541.8(c). The inmate is entitled to request the assistance of a staff representative and may specifically request a staff member who was not a victim, witness, investigator or otherwise involved in the incident. 28 C.F.R. § 541.8(d). If the inmate does not request a staff representative, the warden may also appoint a staff representative if the inmate appears unable to represent himself adequately before the DHO. *Id.* The staff representative may assist the inmate by (1) helping him understand the incident report charges and potential consequences; (2) speaking with and scheduling witnesses; (3) obtaining written statements; and (4) preparing other evidence to be used at the hearing. 28 C.F.R. § 541.8(d)(2).

The DHO may determine that (1) the inmate committed the charged prohibited act or a similar prohibited act; (2) the inmate did not commit the charged prohibited act; or (3) the incident report must be referred back for further investigation, review, and disposition. 28 C.F.R. § 541.8(a). If the DHO concludes that the inmate committed a prohibited act, he may impose any sanction listed in the § 541.3 tables. 28 C.F.R. § 541.8(g). After the hearing, the inmate will

receive a written copy of the DHO's decision.  28 C.F.R. § 541.8(h).  The decision will document (1) whether the inmate was advised of his rights in the DHO process; (2) the evidence on which the DHO relied; (3) the DHO's decision; (4) the sanction; and (5) the reason for the imposed sanction(s).  *Id.*  The DHO is not required to prepare a verbatim record of the hearing.  *Id.*

### C. Further Administrative Remedies

The inmate may appeal the DHO's decision through the Administrative Remedy Program (28 C.F.R. part 542, subpart B).  28 C.F.R. § 541.8(i).  The regulations provide that the inmate should first seek informal resolution with staff before formally submitting a request for an administrative remedy.  28 C.F.R. § 542.13.  The inmate shall submit his formal written administrative remedy request to the warden, using the appropriate form.  C.F.R. § 542.14(a).  If the inmate is not satisfied with the warden's determination, he may then submit an appeal, using the appropriate form, to the Regional Director for the region in which the inmate is currently located.  C.F.R. § 542.15(a).  If the inmate is not satisfied with the determination of the Regional Director, he may submit an appeal on the appropriate form to the General Counsel.  *Id.*  Review by the General Counsel is the final administrative appeal.  *Id.*

### D. Exhaustion

An inmate has exhausted his administrative remedies following review by the General Counsel.  No statute requires a federal inmate to exhaust his administrative remedies.  *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986).  Nonetheless, judicial precedent holds that federal inmates must exhaust their administrative remedies before filing a § 2241 petition.  *Id.*  "The requirement of exhaustion of remedies . . . aid[s] judicial review by allowing appropriate development of a factual record in an expert forum; conserve[s] the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow[s] the administrative agency an opportunity to correct errors occurring in the course of administrative

proceedings." *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). When an inmate has not exhausted his administrative remedies before filing a petition for writ of habeas corpus, the district court may dismiss the claim. *Id.*

### III.   Claim One: Fighting Another Inmate

Petitioner contends that he was denied due process when he was sanctioned with a loss of good conduct time as a result of his fight with another inmate while incarcerated at the U.S. Penitentiary, Marion, Illinois.

#### A.   Procedural and Factual Background

According to Incident Report # 2521519, at about 1:00 p.m. on November 28, 2013, while Petitioner was incarcerated at the U.S. Penitentiary, Marion, he repeatedly struck a fellow inmate, Hoffman, while both were watching television in the day room. In the course of the investigation, Petitioner told the staff investigator that Hoffman had disrespected Petitioner by changing the television channel. Later that day, Hoffman assaulted Petitioner in a separate incident.[2]

Petitioner was charged with prohibited act code 201(fighting with another person), a high severity level prohibited act under 28 C.F.R. §541.3. On December 2, 2013, the UDC found sufficient basis to refer the incident to a DHO for disposition. Petitioner requested a staff representative and indicated his intent to call a witness.

Disciplinary Hearing Officer Jeffrey Buser convened a hearing on December 11, 2013. Petitioner's staff representative, Counselor M. Lewis, reported that she had reviewed the incident report and met with Petitioner. At Petitioner's request, Lewis reviewed the surveillance footage and interviewed Petitioner's witness, inmate David Norquay. Lewis reported that Norquay did not witness the dayroom fight that was at issue in this incident report: Norquay witnessed

---

[2] Prison staff learned of both incidents early in the morning of November 29, 2013, through the anonymous tip of a third inmate, who reported that two inmates had been fighting and that one inmate had been stabbed and was bleeding. Clinical evaluations of both inmates revealed that in the later altercation, Petitioner had incurred lacerations to his right ear and the back of his head.

6

Hoffman's later assault on Petitioner. Lewis had no mitigating evidence to offer on behalf of Petitioner. In his statement, Petitioner maintained that he was not guilty because the incident report did not reflect that Hoffman also hit Petitioner.

Although the DHO found credible Petitioner's statements that he was later assaulted by Hoffman using an improvised weapon (a padlock in a sock), the DHO found that Hoffman's later assault on Petitioner was a separate incident. In light of surveillance video of the dayroom that provided a full view of Petitioner initiating a physical altercation with Hoffman that resulted in both inmates striking each other with fists and wrestling, the DHO concluded that Petitioner had committed the charged prohibited act of fighting with another inmate.

BOP paralegal Jennifer Vickers reviewed BOP's electronic database, SENTRY. Vickers determined that on January 30, 2014, Petitioner appealed the DHO's decision to the BOP Regional office. The regional office denied the appeal on March 18, 2014. On May 7, 2014, Petitioner appealed the decision to the BOP Central Office. Because the Central Officer did not respond within the requisite forty-day period, Petitioner's appeal was deemed exhausted.

### B.      **Procedural Due Process**

Before an inmate may be sanctioned through loss of good conduct time, procedural due process requires (1) written notice of the charged misconduct at least 24 hours before the hearing; (2) an impartial hearing officer or panel; (3) an opportunity to present witnesses and documentary evidence; (4) assistance for illiterate inmates or in complex cases; and (5) a written statement of the evidence on which the officer or panel relied and the reasons for imposing the sanction. *Wolff v. McDonnell*, 418 U.S. 539, 564-572 (1974). In this case, Petitioner received the incident report constituting notice of the charged prohibited act on November 30, 2013, more than 24 hours before the UDC hearing on December 2, 2013. Counselor Lewis assisted Petitioner. Petitioner received written decisions from both the UDC and the DHO.

Petitioner contends that his right to procedural due process was violated by his inability to present his witness to Hoffman's subsequent assault on Petitioner and the severity of Petitioner's injuries as a result of the later assault. Because the incident report concerned only the midday fight in the dayroom, evidence concerning the later altercation was not relevant. The UDC and the DHO properly disregarded it.

Petitioner adds that the determination that Petitioner committed the prohibited act of fighting failed to acknowledge Hoffman's role in the altercation. Whether or not Hoffman also committed a prohibited act was not the subject of the incident report against Petitioner and is not before this Court. In any event, the DHO's determination acknowledged that both Petitioner and Hoffman participated in the fight in the dayroom.

### C. Substantive Due Process

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Ponte v. Real*, 471 U.S. 491, 495 (1985) (quoting *Wolff*, 418 U.S. at 556). "[T]he requirements of due process are met if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455 (1985). Petitioner does not contest that he and Hoffman engaged in a fist fight in the dayroom in the early afternoon of November 28, 2013. Because the fight between Petitioner and Hoffman was captured by the institution's security cameras, the fact of the altercation could hardly be disputed. Sufficient evidence supported the conclusion that, by fighting with Hoffman, Petitioner violated code 210.

### D. Loss of Good Conduct Time

Having concluded that Petitioner committed the prohibited act of fighting with another person, in violation of code 210, the DHO properly sanctioned Petitioner through the loss of 27

days of good conduct time. The regulations are clear: commission of a high severity level prohibited act may be sanctioned by the prisoner's "forfeit[ing] and/or withhold[ing] earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminating or disallowing extra good time (an extra good time or good conduct time sanction may not be suspended**),"** and/or "disallow[ing] ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for the year (a good conduct time sanction may not be suspended)."   *See* Table 1, 28 C.F.R. § 541.3.

## IV.     Claim Two: Wrongful Use of Telephone Accounts

As his second ground for habeas relief, Petitioner contends that the disciplinary action against Petitioner following his misuse of other inmates' telephone privileges at the U.S. Penitentiary, Marion, violated Petitioner's due process rights.

### A.     Procedural and Factual Background

According to Incident Report # 2145198, on April 1, 2011, staff at the U.S. Penitentiary, Canaan, discovered that on March 6, 2011, Petitioner had telephoned his parent's home in Wolf Point, Montana, using another inmate's (Harry Becker) telephone account.  The report charged Petitioner with prohibited act code 297 (use of the telephone for abuses other than criminal), a high severity offense, and code 328 (giving/receiving money or anything of value to/from another inmate), a moderate severity offense.  When given the incident report, Petitioner elected not to make a statement.  Petitioner also waived his rights to have a staff representative assist him and to call witnesses.

Similarly, according to Incident Report #2145200, on April 1, 2011, staff at the U.S. Penitentiary, Canaan, discovered that on March 29, 2011, Petitioner had telephoned his parent's home in Wolf Point, Montana, using another inmate's (Henry Mason) telephone account.  The report charged Petitioner with prohibited act code 297 (use of the telephone for abuses other than

criminal), a high severity offense, and code 328 (giving/receiving money or anything of value to/from another inmate, a moderate severity offense. When given the incident report, Petitioner elected not to make a statement. Petitioner also waived his rights to have a staff representative assist him and to call witnesses.

Disciplinary Hearing Officer Marc A. Renda heard both incident reports on April 19, 2011. In each instance, DHO Renda concluded that Petitioner had committed the code 297 offense of telephone abuse and expunged the code 328 offense as including multiple elements similar to code 297. In each case, DHO Renda provided a written decision in which he imposed sanctions including the disallowance of 27 days of good conduct time.

According to Paralegal Vickers' declaration, Petitioner made three attempts to appeal the decision in each incident report to the regional office. The regional office rejected each of Petitioner's attempted filings for failure to follow the proper format. On August 7, 2014, Petitioner filed an appeal with the General Counsel. On September 11, 2014, the General Counsel rejected the filing for failure to follow the proper format. As a result, Vickers concluded that Petitioner had not exhausted this claim.

### B. Unexhausted Claim

Because Petitioner never filed an appeal in an acceptable format, he never perfected an appeal to the regional office or the General Counsel. As a result, Petitioner did not exhaust his administrative remedies with regard to Incident Reports ## 2145198 and 2145200. Because Petitioner did not exhaust claim two, the Court may dismiss it. *Ruviwat*, 701 F.2d at 845.

### C. No Due Process Violation

Even if this Court were to reach claim two, the record provides no basis for a finding that Petitioner's due process rights were violated. The procedural requisites outlined in *Wolff* were

///

satisfied with regard to each incident. Some evidence, articulated in detail, supports the DHO's determination in each incident.

### D. Conclusion

Because claim two is not exhausted and because Petitioner's claim of a due process violation lacks merit, the Court will dismiss claim two as unexhausted.

## V. Incorrect Custody Assignment

Petitioner contends that on August 25, 2014, while an inmate at the U.S. Penitentiary, Atwater, prison staff ordered Petitioner to go into the general prison population in contravention of his custody assignment and "in prejudice of his safety and without due process." Claim three intertwines a claim that Petitioner was wrongfully penalized for refusing to go to yard and a vague and undeveloped claim that various prison personnel wrongfully calculated Petitioner's custody points to classify him as a high custody inmate and expose him to unsafe conditions.

### A. Refusal to Go to Yard

According to incident report # 2621372, on August 25, 2014, Petitioner refused an order to go to yard, claiming that he could not safely do so. As a result, Petitioner was charged with committing prohibited act code 306 (refusing a program assignment). After being advised of his right to remain silent, Petitioner declined to make a statement. He requested no witnesses.

The UDC determined imposed 30 days commissary restrictions and advised Petitioner of his right to appeal the decision.[3] Nothing in the record indicates any further action on this incident report.

A federal petition for writ of habeas corpus concerns whether a petitioner is in custody in violation of the Constitution. 28 U.S.C. § 2254(a). "Habeas corpus is the exclusive remedy for a

---

[3] Although imposition of a disciplinary sanction (restriction of commissary privileges) suggests that the UDC concluded that Petitioner committed the prohibited act, the UDC did not complete item 18 of the committee action report, in which the committee is to indicate whether it finds that the inmate committed or did not commit the prohibited act. *See* Doc. 20-1 at 6.

state prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release, even though such a claim may come within the literal terms of § 1983." *Preiser v. Rodriguez*, 411 U.S. 475, 488-89 (1973).   A federal district court should not entertain habeas jurisdiction over a prison disciplinary decision that does not affect the legality or duration of a prisoner's confinement.  *Preiser*, 411 U.S. at 485; *Crawford v. Bell*, 599 F.2d 890, 891-92 (9th Cir. 1979).  A plaintiff may not seek both habeas and § 1983 relief in a single action.  *See Heck v. Humphrey*, 512 U.S. 477, 487-88 (1994); *Preiser*, 411 U.S. at 498-99 n. 15; *Young v. Kenny*, 907 F.2d 874 (9th Cir. 1990); *Advisory Committee Notes to Rule 1 of the Rules Governing Section 2254 Cases*.

The Court declines to address the aspect of claim three concerning the commissary restrictions imposed as a sanction for Petitioner's refusal to go to yard because it is not properly before the Court.

### B. <u>Miscalculation of Custody Credits</u>

Petitioner justifies his refusal to go to yard as an attempt to avoid physical harm.  He contends that as a convicted sex offender, his classification as a high custody inmate is inappropriate under the Prison Rape Enforcement Act since he is particularly vulnerable to assault if placed in the general population.  He refers generally to prior administrative actions concerning the proper calculation of his custody points, in which Petitioner has apparently contended that various BOP staff have attempted to manipulate his custody points in order to keep Petitioner in high custody institutions where he cannot safely exist in the general population.  He adds that at least one inmate at Atwater was aware that Petitioner was a convicted sex offender.

The Court is not convinced that this portion of claim three was intended to be a substantive claim. Respondent argues that the Court lacks jurisdiction to review this claim. Respondent correctly points out that pursuant to 18 U.S.C. § 4081, federal prison authorities have

broad discretion in classifying prisoners (*Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir. 1994)) and argues that the Court lacks jurisdiction to consider this subclaim.  Although Respondent's contention provides that Court with an expeditious means of resolving this claim, disposing of this claim as a matter of discretionary classification fails to acknowledge Petitioner's contention that his safety is compromised when his custody point classification results in his being incarcerated in high custody institutions in which his safety as a convicted sex offender is compromised.

To the extent that Petitioner's true concern is that his safety is endangered by his misclassification, this claim appears to be an Eighth Amendment claim of deliberate indifference to safety, not a due process claim.  As such, the claim is properly advanced in a *Bivens* action[4] rather than as part of a habeas petition.

Ultimately, however, Petitioner's claim is unexhausted and too vague to be considered. The allegations in the petition fail to set forth with specificity Petitioner's custody point designation, its changes over time, and the precise nature of the alleged miscalculation.  The vagueness and uncertainty of the claim reflect the lack of exhaustion of Petitioner's administrative remedies, which would necessarily have developed the claim and established its factual basis.[5]  *See, e.g., Ruviwat*, 701 F.2d at 845 (explaining that exhaustion's purposes includes development of a factual record and correction of errors or provision of relief at the administrative level).  Accordingly, the Court declines to reach the portion of claim three alleging miscalculation of Petitioner's custody level.

**VI.     Failure to Receive Legal Property**

In the course of his pleadings, Petitioner complains that following his relocation, the BOP failed to transfer Petitioner's legal property to him in a timely manner.  Respondent addresses

---

[4] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).
[5] As of February 20, 2015, Petitioner disclosed that this claim remained unexhausted.  Doc. 27.

Petitioner's complaint as a separate habeas claim and argues that it is not properly brought in a habeas petition.  Respondent correctly asserts that since conditions-of-confinement claims do not affect the legality or duration of a prisoner's confinement, those claims must be brought in a *Bivens* action.  *See Preiser*, 411 U.S. 475, 485 (1973); *Crawford*, 599 F.2d at 891-92.

## VII. <u>**Certificate of Appealability**</u>

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)  (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
>
> (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims

or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief to be debatable or wrong, or conclude that the issues presented required further adjudication. Accordingly, the Court declines to issue a certificate of appealability.

**VI.     Conclusion**

The Court hereby DENIES the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Court declines to issue a certificate of appealability. The Clerk of Court is directed to enter judgment for the Respondent.

IT IS SO ORDERED.

Dated:  **June 29, 2016**                              /s/ *Sheila K. Oberto*
                                                    UNITED STATES MAGISTRATE JUDGE